United States District Court
Southern District of Texas

**ENTERED**

July 31, 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| Plaintiff, | § | |
| | § | |
| **V.** | § | **CRIMINAL NO. 5:25-CR-00902-2** |
| | § | |
| **GABRIEL SILVA,** | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Gabriel Silva's Motion to Suppress, (Dkt. No. 111), which was referred to the Magistrate Judge Diana Song Quiroga, (Dkt. No. 112). The Magistrate Judge held hearings on March 19, 2026, and April 1, 2026. (Min. Entry March 19, 2026; Min. Entry April 1, 2026). The Magistrate Judge issued a Report and Recommendation. (Dkt. No. 132).[1] The Magistrate Judge recommended that Silva's Motion to Suppress be denied. (*Id.* at 33).[2] Silva filed objections to the Magistrate Judge's Report and Recommendation. (Dkt. No. 135).[3] Considering the parties' briefs, the record, and the applicable authority, Silva's objections are overruled. The Magistrate Judge's Report and Recommendation is adopted in part, as related to Silva. Silva's Motion to Suppress is denied.

## I. BACKGROUND

Defendant Gabriel Silva was arrested on May 19, 2025, following a law enforcement operation to apprehend suspects engaging in drug trafficking, using what is referred to as a controlled buy. (Dkt. No. 150 at 26–27, 49). The lead agent on the case was Homeland Security Investigations (HSI) Agent John Condon. (*Id.* at 24). Agent Condon testified about the operation, the events leading up to it, and the subsequent collection of evidence. According to Agent Condon's testimony, Silva was communicating

---

[1] The Report and Recommendation addressed Silva's motion to suppress, as well as the motion to suppress of his co-defendant, Alexis Gonzalez Hernandez.

[2] When citing to the page numbers of any document in the record, the Court will cite to the page numbering of the Court's internal CM/ECF docket system, and not to the page numbers in the underlying documents.

[3] This Order will only address objections raised by Silva as they pertain to his Motion to Suppress, (Dkt. No. 111).

by cellphone with an undercover agent leading up to the controlled buy. (*Id.* at 34). Because Silva used the cellphone to engage in the alleged drug trafficking, Agent Condon believed that there was evidence of criminal activity on the cellphone. (*Id.* at 35).

As the controlled buy proceeded, the undercover agent gave a "takedown signal," alerting other agents that the suspects could be arrested. (*Id.* at 39). When agents attempted to arrest Silva, he fled in his vehicle. (*Id.* at 40). Silva led law enforcement officers on a high speed chase at speeds up to 120 miles per hour. (*Id.* at 106). Silva was ultimately stopped 30 to 35 miles away and arrested by the Texas Department of Public Safety. (*Id.* at 41).

When Silva was arrested, he exited his vehicle with his hands raised while holding a black Apple iPhone 13 in his right hand. (*Id.* at 41–42, 109). Agent John Silvia testified that when he seized the cellphone, the phone appeared to be recording. (*Id.* at 115). After the phone was seized by law enforcement, Silva's cellphone was stored with the Texas Anti-Gang (TAG) Unit in Laredo, Texas, awaiting a warrant to conduct a forensic search. (*Id.* at 42). Throughout Silva's detention, he made no attempt to reclaim the cellphone while it was being held at the TAG unit. (*Id.* at 45).

Following Silva's arrest, there were several changes among the HSI personnel handling the investigation. The lead case agent, Agent Condon, transferred from the Laredo HSI office shortly after the operation, with the day of the operation marking his final day in Laredo. (*Id.* at 48). The Laredo HSI field office was understaffed from May through October 2025 because numerous agents were temporarily assigned to immigration enforcement operations across the United States. (*Id.* at 129–30).

HSI Special Agent Garrett Tewey took over the case in June 2025 after Agent Condon was reassigned, so Agent Tewey was the affiant on the application for the search warrant for Silva's cellphone. (*Id.* at 137). Agent Condon testified that he informed Agent Tewey that a search warrant was needed for Silva's phone, estimating that he did so sometime between late May and June 2025. (*Id.* at 58–59). While assigned to the case, Agent Tewey also had been assigned to several assignments lasting one to two weeks each, unrelated to this case, from August 2025 through October 2025. (*Id.* at 131–32; *see also* Dkt. No. 117-3). On October 16, 2025, a warrant was issued to conduct a forensic examination of Silva's cellphone. (Dkt. No. 117-1 at 2). A forensic extraction of the

cellphone seized from Silva occurred that the next day, and the forensic extraction was completed on October 18, 2025. (*See* Dkt. No. 111 at 4).

After Silva's initial arrest and during his pre-trial detention in state custody, he was charged federally in the Southern District of Texas. (Dkt. No. 32). A federal grand jury returned a superseding indictment on August 19, 2025, charging Silva with conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). (*Id.*). On February 13, 2026, he filed a motion to suppress evidence obtained from his cellphone. (Dkt. No. 111). His asserted ground for suppression was "the Government's failure to obtain judicial authorization within a reasonable time after seizing the phone, combined with the absence of any lawful justification permitting continued possession of the device." (*Id.* at 4). The Court referred the motion to Magistrate Judge Diana Song Quiroga for a Report and Recommendation. (Dkt. No. 112).

On May 14, 2026, Magistrate Judge Song Quiroga recommended that the Court deny the motion to suppress, finding that: "Due to [Silva's] negligible possessory interest in the cellphone throughout its warrantless seizure and HSI's efforts to navigate circumstances beyond their control, the undersigned finds that the five-month delay in obtaining a warrant to search [Silva's] cellphone did not render the length of its seizure by HSI unreasonable in violation of the Fourth Amendment." (Dkt. No. 132 at 32).

On May 26, 2026, Silva filed timely objections to the Report and Recommendation. (Dkt. No. 135). Silva objects to three of the Magistrate Judge's findings: the conclusion that his incarceration rendered his possessory interest in his cellphone nonexistent; the conclusion the Government acted with sufficient diligence in obtaining a warrant; and the conclusion that suppression is unwarranted under the exclusionary rule.

## II. LEGAL STANDARDS

The district court may refer a motion to suppress evidence to a magistrate judge for a recommendation. Fed. R. Crim. P. 59(b)(1). If a party objects to the magistrate judge's report, the district court reviews the objected-to portions of the report *de novo*. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(3). Courts consider the record developed before the magistrate judge and make their own decision based on that record. *United States v. Raddatz*, 447 U.S. 667, 675 (1980). The Court "may accept, reject, or modify, in

whole or in part, the findings or recommendations made by the magistrate judge." § 636(b)(1)(C). The objecting party must identify the findings it objects to. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). The Court need not consider "frivolous, conclusive, or general objections." *Id.* (citation modified). Portions that are unobjected to are not subject to *de novo* review, so the Court reviews those findings for clear error. *See* § 636(b)(1)(C); Fed. R. Crim. P. 59(b).

### III. DISCUSSION

As a preliminary matter, the Court has reviewed the uncontested findings in the Report and Recommendation as to Silva and finds that there is no clear error. Because the Court finds no clear error, the Court adopts the uncontested findings and conclusions of the Magistrate Judge as to Silva. *See* § 636(b)(1)(C); Fed. R. Crim. P. 59(b).

The Court next turns to Silva's objections, which it must review *de novo*. Silva's objections to the Magistrate Judge's recommended findings can be summarized as follows: (1) Silva had a possessory interest in his cellphone, (2) the Government's diligence in obtaining a search warrant was insufficient, and (3) suppression would provide deterrent value. After careful consideration of the filings, applicable law, and record before the Court, the Court overrules Silva's objections to the Report and Recommendation and adopts the findings of the Magistrate Judge as to Silva. The Court will explain how it reaches its conclusion for each objection below.

### A. Silva's Possessory Interest in His Cellphone Was Limited

Silva objects to the application of law relating to his possessory interest in his cellphone. Specifically, Silva "objects to the Magistrate Judge's conclusion that his incarceration rendered his possessory interest in his cellular phone nonexistent and thereby justified the Government's five-month delay in obtaining a search warrant." (Dkt. No. 135 at 2). Ultimately, Silva's objection to this finding is overruled because any possessory interest in the cellphone was limited by his pretrial custody.

The Fourth Amendment protects individuals from unreasonable searches and seizures, and this protection extends to the digital contents of a cellphone. U.S. Const. amend. IV; *Riley v. California*, 573 U.S. 373, 403 (2014). In determining whether a seizure is reasonable under the Fourth Amendment, courts balance the nature and extent of the intrusion against "the importance of the governmental interests alleged to justify

the intrusion." *United States v. Place*, 462 U.S. 696, 703 (1983). The Supreme Court has held that "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures.'" *United States v. Jacobsen*, 466 U.S. 109, 124 (1984).

Here, the relevant analysis is whether the seizure of the cellphone and the delay in obtaining a warrant for the search of the contents of the phone unreasonably infringed Silva's possessory interest in it. The Court concludes that the Magistrate Judge did not err in concluding that his possessory interests were virtually nonexistent. Silva argues that the Magistrate Judge improperly relied on *United States v. Jackson*, 132 F.4th 1019 (7th Cir. 2025), and *United States v. Sykes*, 65 F.4th 867 (6th Cir. 2023), for the proposition that Silva had no possessory interest in his cellphone during his time in custody. The Court conducts a *de novo* review and finds that the Silva's possessory interest was in fact substantially diminished because he remained detained during the entirety of the seizure before the warrant was issued. The Court further finds that the delay in obtaining the warrant was not unreasonably prolonged and the seizure was not unreasonable because the agents had probable cause to seize Silva's cellphone at the inception.

To assess reasonableness, courts in the Fifth Circuit consider "investigatory diligence, the length of the detention, and whether there were circumstances beyond the investigator's control." *United States v. Martinez*, 25 F.4th 303, 308 (5th Cir. 2022) (quoting *United States v. Beard*, 16 F.4th 1115, 1119 (5th Cir. 2021)). In *Martinez*, the closest Fifth Circuit case on point, the defendant moved to suppress evidence collected from packages seized through the United States Postal Service (USPS). 25 F.4th at 305. The packages were seized on March 12, 2019, and the investigator received them on March 14, 2019. *Id.* On March 20, 2019, the investigator, suspecting that the packages contained illegal controlled substances, contacted border patrol to coordinate a canine sniff. *Id.* The canine alerted to the packages that day, establishing probable cause. *Id.* The Fifth Circuit upheld the district court's conclusion that the eight-day delay was not unreasonable because those eight days included a weekend and the investigator "was required to work on other cases and missed work due to illness." *Id.* As such, the delay

5 / 10

was reasonable.

While *Martinez* does not address the seizure of cellphones, other circuits provide persuasive authority. In *Jackson*, the defendant was arrested with a cellphone on June 30, 2019. 132 F.4th at 1020. A warrant for the phone was not applied for and issued until August 9, 2019, forty days after his arrest. *Id.* The defendant was detained in pre-trial custody for those forty days. The Seventh Circuit held that the forty-day delay was not unreasonable given the defendant's custody during the delay. *Id.* at 1021. The court reasoned that, because the phone remained in official custody between the arrest and the warrant, the phone "contains exactly the same evidence today as it did the moment it was seized." *Id.* "A search in August 2019 created no greater risk of intruding on innocent persons' privacy than a search 40 days earlier would have done." *Id.* The court in *Jackson* further distinguishes this scenario from one where a defendant is released pre-trial. There, "[t]he release presumptively entitles him to regain his possessions, for a phone like a car may be essential to lawful activities." *Id.* (citing *Riley v. California*, 573 U.S. 373, 134 (2014)). Further, the court noted that "[n]o jail or prison allows inmates to keep and use cell phones," and that the defendant never attempted to exercise any possessory interest over the phone during this period. *Id.* The court concluded that the delay was not unreasonably long. *Id.* at 1021–22 (collecting cases).

Similarly, in *Sykes*, the defendant was arrested and his cellphone was seized on October 18, 2018. 65 F.4th at 873. A search warrant was executed on his cellphone on November 29, 2018. *Id.* at 874. The defendant moved to suppress evidence collected from the cellphone, and the district court denied the motion. *Id.* In considering the delay between the seizure and the search of the cellphone, the Sixth Circuit held that the district court properly denied the motion to suppress, noting that the defendant "had a limited possessory interest in the phone because he was not permitted to have the phone while he was in custody. In contrast, the government had a significant interest in retaining possession of the phone, as well as excusable reason for delay." *Id.* at 879. The defendant's interest in the phone was "virtually nonexistent" because his detention facility was required to retain his phone and the defendant never requested his phone. *Id.* The government had a significant interest in the phone because there was probable cause to believe that there was evidence of child pornography. *Id.* Finally, the

government had established that the delay was not "due to indecision or lack of diligence, but instead to the demands of this and other cases." *Id.* at 878.

Here, as in *Jackson* and *Sykes*, Silva remained detained during the entirety of the time between the seizure of the phone and the warrant application. Inmates in state or federal custody are not allowed to have cellphones. There is no evidence that Silva requested access to his cellphone or that it be given to someone else. A possessory interest is "[t]he present right to control property, including the right to exclude others, by a person who is not necessarily the owner." Possessory Interest, Black's Law Dictionary (11th ed. 2019). Silva's possessory interest in the phone was limited because he did not have the right to control the property by virtue of his pretrial custody. Silva's objection to the Magistrate Judge's finding on his possessory interest is overruled.

### B. The Government's Diligence Was Sufficient

Silva objects to the conclusion that the Government acted with sufficient diligence in obtaining a search warrant. Ultimately, Silva's objection is overruled because the record demonstrates that circumstances outside the investigator's control led to delay in obtaining a warrant, and the delay was not unreasonable.

The key determination here is whether the Government acted with sufficient diligence to justify the delay in applying for the search warrant. Silva was arrested and his phone was seized on May 19, 2025. The application for the search warrant was submitted on October 16, 2025. Based on these dates, there was a five-month delay between the seizure of the phone and the application for the search warrant.

As explained above, the Court weighs investigatory diligence, length of the detention, and circumstances beyond the investigator's control to assess reasonableness. *Martinez*, 25 F.4th at 308. In *Martinez*, the eight-day delay was justified by the investigator's workload and illness. *Id.* In *Jackson*, the forty-day delay was found to be reasonable without analysis of the government's diligence. 132 F.4th at 1020. In *Sykes*, the government had established that the delay was not "due to indecision or lack of diligence, but instead to the demands of this and other cases." 65 F.4th at 878.

Here, the five-month delay is beyond what other courts have found to be reasonable, however, the Court finds that the Government has provided a sufficient explanation for the delay. The delay in obtaining a warrant was due to issues outside the

officer's control. In 2025, the scale of HSI workload in Laredo increased immensely. (Dkt. No. 150 at 129). HSI Special Agent Garrett Tewey took over the case in June 2025 after Agent Condon was reassigned. (*Id.* at 137). After Agent Tewey received the case, three of the more experienced agents in HSI Laredo left the unit between May 2025 and October 2025. (*Id.* at 129–30). This resulted in many cases being redistributed between the Agents, adding to their caseload. (*Id.* at 131). In addition, Agent Tewey was assigned "[a] lot of additional duty assignments where [he was] not doing [his] normal stuff to help with [Information Collection Review Office]." (*Id.* at 129). This included Agent Tewey being sent to multiple cities on short work assignments, such as Dallas, Atlanta, McAllen, Memphis, and "a multi-day shooting competition in Ohio." (*Id.* at 131–32). Agent Tewey testified that these new responsibilities and work assignments impaired his ability to handle Silva's case. (*Id.* at 132). The demands of other cases are important in determining whether the length of a warrantless seizure is reasonable. *See Martinez*, 25 F.4th at 308; *see also Sykes*, 65 F.4th at 878.

Due to the unprecedented increase in workload, staff turnover, and the demands of multiple trips, the Court finds that the delay cannot be attributed to a lack of diligence. On the whole, the record shows circumstances outside the investigator's control that led to delay in obtaining a warrant. Accordingly, Silva's objection to the Magistrate Judge's Report and Recommendation regarding diligence is overruled.

Based on the Court's overruling of the first two objections, the Court concludes that the five-month delay in applying for a search warrant while Silva was in custody was not unreasonable and his Fourth Amendment rights were not violated by the seizure. In considering investigatory diligence, length of the detention, and circumstances beyond the investigator's control, the Court finds that the delay was not unreasonable. As such, the delay in obtaining the search warrant did not violate Silva's Fourth Amendment protections in light of his limited possessory interest in the cellphone.

### C. Deterrent Value of Suppression

Silva objects to "the conclusion that suppression is unwarranted because the agents' conduct was not sufficiently deliberate to justify application of the exclusionary rule." (Dkt. No. 135 at 6). The Court has already found that Silva's Fourth Amendment rights were not violated, but the Court also addresses Silva's objection to the Magistrate

Judge's findings on the deterrent value of suppression in the alternative. Silva's objection on this issue is overruled because the record does not establish that the Government engaged in conduct warranting application of the exclusionary rule.

When applicable, the exclusionary rule prohibits the use of evidence obtained in violation of the Fourth Amendment. *Herring v. United States*, 555 U.S. 135, 139–40 (2009). The sole purpose of the exclusionary rule is to deter Fourth Amendment violations. *Davis v. United States*, 564 U.S. 229, 236 (2011). Courts focus on the efficiency of the rule in deterring future Fourth Amendment violations and weigh those benefits against the costs. *Herring*, 555 U.S. at 141. "Where 'the exclusionary rule does not result in appreciable deterrence, then, clearly, its use . . . is unwarranted.'" *United States v. Rodriguez-Rivas*, 151 F.3d 377, 379 (5th Cir. 1998) (quoting *United States v. Janis*, 428 U.S. 433, 454 (1976)).

Here, the Court finds the Government did not violate any Fourth Amendment protections in acquiring a search warrant. Even assuming there was an unreasonable delay in procuring the warrant, the exclusionary rule would not apply. Agent Tewey has presented evidence demonstrating circumstances outside his control that led to delay in obtaining a warrant. If the Court were to apply the exclusionary rule to suppress evidence from the cellphone, it would have little—if any—deterrent effect. Any deterrent benefit would be minimal and outweighed by the social costs of excluding evidence lawfully obtained under a search warrant. Accordingly, there is no appreciable deterrence, and the exclusionary rule is unwarranted.

Even if the delay between the seizure of Silva's cellphone and the issuance of the search warrant was unreasonable, suppression of the evidence is not warranted. Thus, Silva's objection to the Magistrate Judge's finding on the exclusionary rule is overruled.

## IV. CONCLUSION

Having reviewed *de novo* the portions of the Report and Recommendation that Silva objected to, the Court finds that the motion to suppress should be denied. Silva's possessory interest was greatly diminished by his pretrial detention. The Government acted with sufficient diligence to obtain a search warrant given circumstances outside of the investigator's control. And finally, the record fails to establish that the exclusionary rule justifies suppression. Finding no violations of the Fourth Amendment that warrant

suppressing the evidence, the Court denies the motion to suppress.

Accordingly, Silva's objections to the Report and Recommendation, (Dkt. No. 135), are **OVERRULED**. The Magistrate Judge's Report and Recommendation, (Dkt. No. 132), is **ADOPTED IN PART,** only as to Defendant Silva. Defendant Silva's Motion to Suppress, (Dkt. No. 111), is **DENIED.**

It is so **ORDERED**.
SIGNED on July 31, 2026.

John A. Kazen
United States District Judge